# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

RYAN COLLINS                                       CIVIL ACTION

VERSUS                                             20-199-SDD-RLB

CONTROLWORX, LLC

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant, ControlWorx, LLC ("ControlWorx" or "Defendant").  Plaintiff, Ryan Collins ("Collins" or "Plaintiff"), has filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3] For the following reasons, the Court finds that Defendant's motion should be granted.

## I.    CHALLENGED EXHIBITS

Both Parties have raised objections to certain exhibits submitted in connection with this *Motion*.  The Court will address each objection below.

### A.  Fontenot Declaration

Plaintiff has challenged the Declaration of Human Resources ("HR") representative Mary Fontenot ("Fontenot") as a so-called "sham" affidavit.  Defendant designated three representatives to testify on behalf of the company at the Rule 30(b)(6) deposition:  HR Manager Fontenot, General Manager Michael Chaisson ("Chaisson"), and Quality Assurance Manager Troy Green ("Green").  Plaintiff urges the Court to strike

---

[1] Rec. Doc. No. 32.
[2] Rec. Doc. No. 36.
[3] Rec. Doc. No. 38.

Fontenot's Declaration, arguing that she attests to facts in her Declaration that she did not provide in the company's Rule 30(b)(6) deposition.  Specifically, Plaintiff argues that Fontenot presents historical information about the Defendant in an attempt "to bootstrap the urgency of the need for [Plaintiff] to work certain hours during the turnaround time …"[4] Plaintiff also argues: "The 30(B)(6) deposition is voluminous, yet devoid of the purported facts espoused by Ms. Fontentot in the Defendant's Declaration of Mary Fontentot used in support of its Motion for Summary Judgment."[5]  Further, Plaintiff contends that Fontenot's deposition testimony was largely unresponsive to the question of available coverage for Plaintiff's shifts, while Green eventually admitted in the company's deposition that he could have covered Plaintiff's work when Plaintiff needed "medical leave for his shoulder condition."[6]

Defendant objects to this challenge, arguing that "Plaintiff's suggestion that Ms. Fontenot's affidavit is a sham is ludicrous," because Plaintiff has not directed the Court to a single contradiction between Fontenot's Declaration and her deposition testimony.[7] Defendant maintains that,

> [E]ssentially, Plaintiff blames Defendant for his counsel's failure to ask questions that would have elicited the precise testimony set forth in Ms. Fontenot's declaration. This is not a basis for application of the sham declaration rule. Ms. Fontenot has not given, nor has Plaintiff identified, any inconsistent testimony whatsoever. Her declaration is admissible and uncontroverted evidence.[8]

As a general rule, a self-serving affidavit, standing alone, will not defeat a motion

---

[4] Rec. Doc. No. 36-1 at ¶ 1.
[5] Rec. Doc. No. 36, p. 7.
[6] *Id.*
[7] Rec. Doc. No. 38, p. 3.
[8] *Id.*

for summary judgment.[9] This rule applies with even greater force and effect when the proposed affidavit is a "sham." "[A] nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."[10]  The Fifth Circuit has held:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit **contradicting his own prior testimony**, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.[11]

Thus, a court properly disregards a non-moving party's "sham" affidavit when weighing the evidence supporting summary judgment.[12]

The Court has reviewed Fontenot's Declaration and her deposition testimony.  The historical background provided by Fontenot in her Declaration does not contradict anything she testified to in the company deposition.   Additionally, this historical information does not "manufacture a material issue of fact."  Rather, it provides context for the needs of the company.   A declaration that does not contradict prior sworn testimony is not a sham affidavit.  Providing more facts, details, or context not elicited during a prior deposition does not render a later declaration a "sham."    Additionally, Plaintiff did not demonstrate how Green's testimony is relevant to Fontenot's Declaration.[13]  Plaintiff's objection to Fontenot's Declaration is overruled.

### B.  Plaintiffs' Affidavit

The Defendant has likewise challenged evidence offered by the Plaintiff in opposition to the instant Motion. First, Defendant contends Collins' Affidavit is

---

[9] *Spencer v. FEI, Inc.*, 725 F. App'x 263, 268 (5th Cir. 2018) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 n.49 (5th Cir. 2005)).

[10] *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (citing authorities).

[11] *Id.* (quoting *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969))(emphasis added).

[12] *See id.* at 386-387.

[13] As will be addressed below, Green's "admission" or concession that he could have covered some of Plaintiff's work shifts does not carry Plaintiff's burden of proof on his disability discrimination claim.

inadmissible because it is not properly notarized:  There appears to be a signature above the notary block, but the name is unintelligible and there is no notary seal or date on which the notary's commission expires."[14]

Plaintiff did not respond to this objection.

Defendant is correct that Plaintiff's Affidavit is not properly notarized, and it does not state that Plaintiff is making the statements "under penalty of perjury," as required by 28 U.S.C. § 1746.  In *Elwakin v. Target Media Partners Operating Co., LLC*,[15] the district court for the Eastern District of Louisiana opined that an affidavit submitted in connection with a summary judgment was not notarized, and:

> This failure makes the Affidavit incompetent evidence for summary judgment. *See Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1305–06 & n. 9 (5th Cir.1988) (noting that an unsigned affidavit which failed to state that it was made under penalty of perjury was properly stricken from consideration of summary judgment motion). Further, the Affidavit does not meet the criteria for "unsworn affidavits" contained at 28 U.S.C. § 1746 because this statute also requires the person making the verification to state that the declaration is made "under penalty of perjury," 28 U.S.C. § 1746, but no such exact or equivalent statement appears in the Coffman Affidavit. Therefore, the affidavit as originally submitted is inadmissible.[16]

The same is true of Plaintiff's Affidavit.  There is no language in the Affidavit stating that Plaintiff is providing the information "under penalty of perjury."  As no attempts to cure this defect have been made, Plaintiff's Affidavit is stricken from the record.[17]

---

[14] Rec. Doc. No. 39, p. 3 n.4.

[15] 901 F.Supp.2d 730 (E.D. La. 2012).

[16] *Id.* at 738.

[17] The Court notes that, even if properly notarized, the affidavit submitted would likely be stricken in large part because it is rife with legal arguments and conclusions, flows in and out of first person and third person narrative, states legal arguments and legal conclusions in several instances, contains interlineations and/or typographical corrections not initialed by Plaintiff, and improperly states the intent of other persons and their "purported conversations."  The document does not appear to be in final form given the handwritten edits and the fact that the last sentence is incomplete and appears to trail off:  "After he was terminated, Collins spoke the following to Fontenot."  Rec. Doc. No. 36-12 at p. 3.  No further statements appear below this last statement, and the next line contains Plaintiff's signature.

### C.  Transcripts of Recordings

Defendant also objects to Plaintiff's purported transcripts of secretly recorded conversations between himself and Defendant's employees.  "'Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible ... the material may be presented in a form that would not, in itself, be admissible at trial.'"[18] However, "'[u]nsworn documents are ... not appropriate for consideration.'[19] As a general rule, inadmissible evidence cannot be relied upon to create an issue of material fact for the purpose of defeating a summary judgment motion.'"[20]

The transcripts of secret recordings submitted by Plaintiff are inadmissible as they are unsworn and unsigned statements.  Thus, these transcripts are stricken.[21]

### D.  White Board Photograph

Defendant also objects to the white board photograph[22] submitted by Plaintiff. While Defendant is correct that the photograph is unauthenticated, it could be authenticated at trial; therefore, the Court will consider this exhibit.

## II.    FACTUAL BACKGROUND

Local Rule 56(f) provides:

Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. **An assertion of fact set forth in a**

---

[18] *Saketoo v. Tulane University School of Medicine*, 510 F.Supp.3d 376, 396 (5th Cir. 2020)(quoting *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted) (alteration in original)).

[19] *Bosarge v. Cheramie Marine LLC*, 121 F.Supp.3d 599, 603 (E.D. La. 2015)(quoting *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987).

[20] *Id.* (quoting *Travland v. Ector Cnty., Texas*, 39 F.3d 319 (5th Cir.1994); Alan Wright & Arthur Miller, 10A Fed. Prac. & Proc. Civ. § 2727 (3d ed.) ("Material that is inadmissible will not be considered on a summary-judgment motion because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless.")).

[21] Rec. Doc. Nos. 11 & 14.  The Court alternatively notes that, having read the transcripts of these recordings, even if admitted, the Court would reach the same result in this matter.

[22] Rec. Doc. No. 15.

**statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion**. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. **The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts**. (emphasis added).

Local Rule 56 (c) requires an opposing party to:

submit with its opposition a separate, short, and concise statement of material facts. **The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule**. Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation. The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule.

Unless otherwise indicated, set forth below are facts admitted or deemed admitted for purposes of this *Motion* based on Plaintiff's failure to comply with Local Rules 56(c) & (f) of the Middle District of Louisiana.  Where Plaintiff failed to cite to record evidence in denying Defendant's statements, submitted legal argument rather than a supported factual statement, or cited record evidence that does not support Plaintiff's counterstatement, the Defendant's proffered statements of fact are deemed admitted as not properly controverted under the Local Rules of this Court.

ControlWorx is in the business of providing a variety of professional services to industrial clients, including but not limited to support for their project and turnaround needs, control valve maintenance, new sales and service of relief devices, and control

system installation and related services.[23]  Collins began employment with ControlWorx as a Valve Technician on April 30, 2016, after ControlWorx acquired his former employer, GroQuip.[24]  He was most recently employed by ControlWorx as a Quality Assurance Specialist 1.[25]

On September 21, 2017, Collins injured his shoulder in a non-work-related motor vehicle accident.[26] On October 30, 2017, Fontenot, as ControlWorx's HR representative, provided FMLA paperwork for Collins to complete. ControlWorx approved Collins for FMLA leave from September 21, 2017 to November 8, 2017. Collins was released to return to work without restrictions as of November 8, 2017.[27]  ControlWorx uses a 12-month rolling FMLA period. Under the rolling method, the employer looks back over the 12-month period preceding the date leave is needed to determine how much of the 12-week yearly allotment of FMLA leave remains available.[28] Any accrued paid time off must be used contemporaneously with FMLA leave under ControlWorx's policy.[29] [30]

---

[23] Rec. Doc. No. 32-3, Declaration of Fontenot at ¶ 3.

[24] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 8, ll. 8-11; p. 9, ll. 1-3.

[25] Rec. Doc. No. 32-5, Depo of Collins at p. 50, ll. 12-18.  Plaintiff's counterstatement declares that "his position as Valve Technician was never changed to a Quality Assurance Specialist so there is no 'established fact' that Mr. Collins was a Quality Assurance Specialist 1[.]" Plaintiff's citation does not support this counterstatement, and Plaintiff admitted that he was a Quality Assurance Specialist 1 at the time of his termination in Rec. Doc. No. 36-1 at ¶ 2 and in his deposition, Rec. Doc. No. 32-5 at p. 50, ll. 12-18.

[26] Rec. Doc. No. 32-5, Depo of Collins at p. 74, ll. 19-25, p. 75, ll. 1-4.

[27] *Id.* at p. 78, ll. 12-25, p. 79, ll. 1-16, p. 81, ll. 15-21, p. 82, ll. 22-25, p. 83, ll. 1-21, p. 84, ll. 2-25, p. 85, ll. 1-7, and Exhibits 7, 8 and 9 thereto; Rec. Doc. No. 32-4, Depo of ControlWorx at p. 68, l. 3 - p. 69, l. 21, and Exhibit 11 thereto.  Plaintiff attempts to qualify this statement with his Affidavit that was stricken for the reasons set forth above.

[28] Doc. No. 32-4, Depo of ControlWorx at p. 35, ll. 1-11.; p. 43, l. 9 - p. 44, l. 23.

[29] *Id.* at p. 70, ll. 13-25; p. 71, ll. 1-3.

[30] Plaintiff attempts to qualify this statement with legal argument and, in part, citation to unidentified exhibits. Additionally, the cited testimony does not support Plaintiff's counterstatement.  As ControlWorx correctly responded:  "Collins contends that ControlWorx 'regularly grants extensions of the time delays' with respect to FMLA leave and cites pp. 70-72 of ControlWorx's deposition. *See id.* However, the cited testimony does not support Collins's assertion that such extensions are 'regularly granted,' nor does the testimony establish that ControlWorx 'extends' protected FMLA leave rather than providing gratuitous and unprotected unpaid leave following the expiration of FMLA leave. *See* ControlWorx Dep. (Rec. Doc. 32-4, p. 24, 71:21-72:8)(testifying that ControlWorx granted Collins an additional three weeks of leave beyond the twelve

In July 2018, Collins had rotator cuff repair surgery for his prior shoulder injury.[31] In connection with that surgery, Collins sought, and ControlWorx approved, another FMLA leave.[32]   Specifically, on July 16, 2018, ControlWorx conditionally granted the FMLA leave pending receipt of documentation reflecting his qualification for same, which ControlWorx approved on August 7, 2018.[33]  Collins was notified that his FMLA leave was approved through August 28, 2018, the date on which his remaining FMLA leave at the time would expire. ControlWorx also granted him an additional three weeks of leave beyond what he had available under the FMLA.[34] Collins admits he used all his remaining FMLA leave for shoulder surgery in 2018 and received additional leave thereafter.[35]

Employees of ControlWorx must provide a medical release upon returning from leave, specifying any restrictions that apply, which HR reviews to determine the next course of action.[36]  Following his 2018 FMLA leave, Collins provided releases from his health care provider dated August 27, September 18, and October 8, the first two specifying certain physical restrictions and the third requiring physical therapy three times a week.[37] The physical restrictions were accommodated by ControlWorx through October

weeks required by the FMLA and indicating that decisions regarding whether to grant additional leave beyond the FMLA requirements are determined on a case-by-case basis)."  Rec. Doc. No. 39 at ¶ 5.

[31] Rec. Doc. No. 32-5, Depo of Collins at p. 90, ll. 3-11.

[32] *Id.* at p. 90, ll. 12-25; Rec. Doc. No. 32-4, Depo of ControlWorx at p. 68, l. 3 - p. 69, l. 21, and Exhibit 11 thereto.

[33] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 58, ll. 7-25, p. 59, ll. 1-8, p. 60, ll. 20-25, p. 61, ll. 1-9, p. 65, ll. 17-25, p. 66, ll. 1-23, and Exhibits 7 (ControlWorx_000047-48) and 9 thereto; Rec. Doc. No. 32-5, Depo of Collins at p. 97, ll. 6-25, p. 98, ll. 1-10, and Exhibit 14 thereto.

[34] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 68, ll. 3-12, and Exhibit 9 thereto.

[35] Rec. Doc. No. 32-5, Depo of Collins at p. 96, ll. 2-8, and Exhibit 13 thereto.  Plaintiff attempts to qualify this statement, offering the counterstatement that "Mary Fontenot grants extensions of the Family and Medical Leave Act as required by law."  However, this citation does not support Plaintiff's statement, Plaintiff engages in improper legal argument, and Plaintiff admits that Fontenot gave him an additional extension of three weeks' leave. *See* Rec. Doc. No. 36-1 at ¶ 9; Rec. Doc. No. 39 at ¶ 7.

[36] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 31, l. 5 - p. 32, l. 9.  Plaintiff cites no record evidence in his attempt to qualify this statement.  *See* Rec. Doc. No. 36-1 at ¶ 10.

[37] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 54, ll. 12-25, p. 55, ll. 1-24, and Exhibit 8 thereto.

8, 2018, at which time they were to be re-evaluated should the restrictions need to continue.[38]  Although no specific dates or times were specified for the physical therapy identified in the October 8, 2018 release, ControlWorx accommodated Collins by allowing him to schedule and attend physical therapy at any time he chose and by allowing him to decide when he felt ready to return to work thereafter.[39]  Plaintiff denies this and contends he was "the only person put on an 8 to 8 shift."[40]  However, Plaintiff's citation to Exhibit 13 (incorrectly identified as Exhibit 12), ControlWorx's EEOC Position Statement (Rec. Doc. No. 13), does not support Plaintiff's counterstatement.[41]

ControlWorx maintains that spring and fall are its heavy turnaround seasons.[42]  Turnaround occurs when plants shut down to get valves replaced and serviced, among other things, which requires increased work for those who work with industrial facilities. When Collins returned to work in September 2018, it was turnaround season for the company.[43]  During turnaround season, department managers collaborate to determine resources and schedules for employees to cover the outage work.[44]  At the time of the turnaround in 2018, employees were put on one of two shifts to make sure there was

---

[38] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 79, ll. 20-25, p. 80, ll. 1-25, p. 81, ll. 1-11, and Exhibit 13 thereto; Rec. Doc. No. 32-5, Depo of Collins at p. 98, ll. 11-25, p. 99, ll. 1-25, p. 100, ll. 1-25, p. 101, ll. 1-17, p. 102, ll. 1-6, and Exhibits 15 -17 thereto.  Plaintiff denies this statement, Rec. Doc. No. 36-1 at ¶ 11; however, the only citation provided is to Exhibit 7 (Rec. Doc. No. 36-7), a letter from Fontenot to Plaintiff that supports none of Plaintiff's purported counterstatements.
[39] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 103, ll. 19-25, p. 104, ll. 1-6, and Exhibit 12 (ControlWorx_000069) thereto; Rec. Doc. No. 32-5, Depo of Collins at p. 108, ll. 18-22, and Exhibit 18 thereto.
[40] Rec. Doc. No. 36-1 at ¶ 12.
[41] The remainder of Plaintiff's counterstatement contains improper legal arguments and conclusions, without citation.  *See id.*
[42] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 90, ll. 3-10.
[43] *Id.* at p. 90, l. 11-25, p. 91, ll. 1-13; Rec. Doc. No. 34-5, Depo of Collins at p. 105, ll. 3-25. Plaintiff denies this statement but offers only legal arguments and cites to no contradictory record evidence. *See* Rec. Doc. No. 36-1 at ¶ 13.
[44] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 90, ll. 11-25, p. 91, ll. 1-13.

adequate coverage during that period of increased work.[45]  Following his FMLA leave, Collins was offered to choose one of the two shifts, either the shift beginning at 8:00 a.m. or the shift beginning at 11:00 a.m. He refused to work either schedule, so his supervisor selected the 11:00 a.m. shift for him because it was necessary to set employee schedules.[46]

ControlWorx maintains that Collins began refusing to adhere to this work schedule, arriving early and leaving before his shift ended, without notice or approval.[47] ControlWorx contends Collins was not permitted to show up and work early before his shift because schedules were set to ensure full coverage based on customer needs and employee skills.[48] As an accommodation, Collins was permitted to attend physical therapy and return to work whenever he was able to do so. He was not, however, permitted to show up early and begin working before the start of his shift.[49]  Plaintiff counters that he had always been allowed to work early, and this "restriction was put in place to punish him for taking off to go to PT."[50]  Plaintiff cites to Exhibit 13 (Rec. Doc. No. 36-13), ControlWorx's EEOC Position Statement, which does not support Plaintiff's assertion.[51]

Collins told Green that he was not going to work either the 8:00 a.m. shift or the 11:00 a.m. shift.[52]  Collins refused the offered accommodation for his physical therapy

---

[45] Rec. Doc. No. 32-5, Depo of Collins at p. 107, ll. 13-20.
[46] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 204, ll. 12-25, p. 205, ll. 1-20, p. 209, ll. 10-25, p. 210, ll. 1-3; Rec. Doc. No. 32-5, Depo of Collins at p. 109, l. 25, p. 110, ll. 1-25.  Plaintiff states that he denies these previous statements; however, Plaintiff makes no counterstatement but simply re-states Defendant's statements. *See* Rec. Doc. No. 36-1 at 14.
[47] Rec. Doc. No. 32-5, Depo of Collins at p. 121, ll. 22-25, p. 122, ll. 1-4.
[48] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 129, ll. 5-12, p. 136, ll. 21-25, p. 137, ll. 1-25, p. 138, ll. 1-25, p. 139, ll. 1-9, p. 205, ll. 21-25, p. 206, ll. 1-16.
[49] Rec. Doc. No. 32-5, Depo of Collins at p. 109, ll. 12-18; Rec. Doc. No. 32-4, Depo of ControlWorx at p. 203, ll. 12-25, p. 204, ll. 1-11; p. 207, ll. 19-25, p. 208, ll. 1-15.
[50] Rec. Doc.  No. 36-1 at ¶ 16.
[51] The remainder of Plaintiff's denial is improper legal argument and is based on inadmissible evidence – the white board, Rec. Doc. No. 36-15.
[52] Rec. Doc. No. 32-5, Depo of Collins at p. 110, ll. 15-20.

and refused to work the 11:00 a.m. - 11:30 p.m. schedule or to return to work following any therapy appointments.[53]  Collins argues that he was provided no accommodations and that he was not allowed to work the 6 am to 6 pm shift he requested, then he was written up after taking time to rest after his PT.[54]  Collins cites to a doctor's release[55] and an email from Fontenot and Ellen McClung ("McClung"), another HR representative, to Green.[56]  The email does demonstrate that the two shifts offered to Collins were 8am-8pm or 11am-11:30 pm.[57]

On October 5, 2018, Collins received a memorandum from ControlWorx that again informed him that ControlWorx would accommodate his physical therapy and that his assigned schedule was 11:00 a.m. - 11:30 p.m. ControlWorx gave Collins the ability to work around his doctor's visits and physical therapy visits, which the second shift accommodated better than the first.[58]  The company stated: "This schedule allows you to attend therapy in the morning. Also, we understand that you may need time to recover from therapy and will allow you to come in later on those days. That time may be 2:00 pm, 3:00 pm, or later depending on when you feel ready to return." Collins was also reminded that he was required to adhere to his work schedule, with the accommodations, and was not to come in to work early before the start of his shift to make up missed work

---

[53] *Id.* at p. 110, ll. 21-25, p. 114, ll. 18-25, p. 115, ll. 1-25, p. 116, ll. 1-25, p. 117, l. 1, and Exhibit 18 thereto.
[54] Rec. Doc. No. 36-1 at ¶ 17.
[55] Rec. Doc. No. 36-16.
[56] Rec. Doc. No. 36-17.
[57] The remainder of Plaintiff's counterstatement contains improper legal argument. *See* Rec. Doc. No. 36-1 at ¶ 17.
[58] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 208, ll. 20-24.

time.[59] Despite this reminder, Collins again showed up for work prior to the beginning of his shift.[60]

ControlWorx maintains that there was no restriction from Collins's physician that physical therapy be scheduled at any specific time or that he remain off work after therapy appointments.[61] Plaintiff denies this statement in part, citing to his doctor's release dated October 8, 2018, wherein his doctor advises that "Patient needs to focus on physical therapy to fully recover from surgery … Back to short-term disability if unable to accommodate this and rest with work schedule."[62]

October 5, 2018 was the last date Collins reported to ControlWorx.[63] He met with Green, and HR representative McClung to discuss the October 5, 2018 memorandum, but he did not report to work for his assigned shift at 11:00 a.m. that day or on October 8.[64] Collins testified that he understood that failing to report to work at the assigned time is a violation of company policy and that an employee who violates company policy can be fired for doing so.[65]  None of the medical releases provided by Collins to ControlWorx after returning from FMLA leave in 2018 restricted him from working on October 5 or any specific date thereafter.[66]  Collins was advised to apply for PTO for days he missed

---

[59] *Id.* at p. 103, ll. 19-25, p. 104, ll. 1-6, p. 106, ll. 17-25, p. 107, ll. 1-3, and Exhibit 17 thereto.  Plaintiff denies these statements and argues that this accommodation violated the FMLA and did not give him notice of his right to take FMLA leave.
[60] Rec. Doc. No. 32-5, Depo of Collins at p. 122, ll. 1-18.
[61] *Id.* at p. 104, ll. 1-13, and Exhibit 17 thereto.
[62] Rec Doc. No. 36-16 (Exhibit 16 erroneously identified as Exhibit 15).
[63] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 112, ll. 3-16.
[64] *Id.* at p. 165, ll. 1-25, p. 166, ll. 1-25, p. 167, ll. 1-16, and Exhibit 16 thereto.  Plaintiff provides a counterstatement unsupported by record evidence, that contains improper legal argument, and is incomplete.  *See* Rec. Doc. No. 36-1 at ¶ 20.
[65] Rec. Doc. No. 32-5, Depo of Collins at p. 117, ll. 2-15, p. 118, ll. 13-16.  Curiously, despite his deposition testimony, Plaintiff denies this statement without explanation, only citing to Exhibit 17, an email from Fontenot and McClung to Green that does not address this issue.  *See* Rec. Doc. No. 36-1 at ¶ 21.
[66] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 154, ll. 20-25, p. 155, ll. 1-11, p. 191, ll. 8-16, and Exhibit 12 thereto.  Plaintiff denies this statement "as written" and then makes the legal argument that Defendant violated the FMLA.  *See* Rec. Doc. No. 36-1 at ¶ 22.

between October 5 and October 12, but he did not do so and he did not call in or show for work on October 8.[67]

On October 12, 2018, Green and McClung met with Collins to provide a final written warning addressing his failure to adhere to his schedule, as accommodated, and reminding him of his obligation to adhere to the schedule.[68]  Collins refused to acknowledge the memorandum and repeated that he would not work the assigned shift, as modified to accommodate his restrictions. He then turned in his keys and left.[69] Because he refused to perform either of the available shifts, the company considered him to have voluntarily quit his job.[70]

The Parties agree that, on April 23, 2018, Collins received a raise from $20.50 per hour to $23.00 per hour.[71]  The Parties also agree that Collins never received a cut in pay or demotion while employed with ControlWorx.[72]

ControlWorx did not consider or regard Collins as having a disability based on his medical restrictions.[73]  If an employee provides notice of a disability, the company goes through the interactive process to determine if accommodations are needed.[74] ControlWorx contends it is an equal opportunity employer and maintains policies

---

[67] Rec. Doc. No. 32-5, Depo of Collins at p. 127, ll. 17-25, p. 128, ll. 1-15.  Plaintiff attempts to qualify this statement; however, his counterstatement in unsupported by citation to the record.  *See* Rec. Doc. No. 36-1 at ¶ 23.

[68] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 191, ll. 17-25, p. 192, ll. 1-25, p. 193, ll. 1-3; Rec. Doc. No. 32-5, Depo of Collins at p. 119, ll. 1-25, p. 120, ll. 1-12, p. 123, ll. 3-9, and Exhibit 19 thereto.  Plaintiff denies this statement, but simply re-types ControlWorx's statement; thus, ControlWorx's statement is deemed admitted.  *See* Rec. Doc. No. 36-1 at ¶ 24.

[69] Rec. Doc. No. 32-5, Depo of Collins at pp. 133-135.

[70] *Id.*  Plaintiff denies this statement without comment and cites to Exhibit 17, which is not a transcript but an email.  *See* Rec. Doc. No. 36-1 at ¶ 24.

[71] Rec. Doc. No. 32-5, Depo of Collins at p. 90, ll. 1-2, and Exhibit 11 thereto.

[72] *Id.* at p. 74, ll. 13-18.

[73] Rec. Doc. No. 32-4, Depo of ControlWorx at p. 117, ll. 6-9.

[74] *Id.* at p. 117, ll. 10-25, p. 118, ll. 1-12.  Plaintiff attempts to qualify this statement, stating that Collins informed ControlWorx of a disabling condition on October 5; however, Plaintiff cites to Exhibit 17, which does not support this contention.

prohibiting discrimination against employees on the basis of disability or any other protected status and also provides reasonable accommodations to qualified individuals when necessary to enable them to perform the essential functions of the job.[75]    The Parties agrees that ControlWorx also publishes to employees its policies regarding the Family and Medical Leave Act leave and paid time off ("PTO").[76]

The facts being mostly uncontested,[77] Collins argues that many of the facts offered by ControlWorx are irrelevant to the issue of whether it violated the law.  Plaintiff filed suit in this Court, asserting claims against ControlWorx under the FMLA and the LEDL, (Spell out) disability discrimination under Louisiana state law.  ControlWorx now moves for summary judgment on Collins' claims, arguing that he has not carried his burden in demonstrating that ControlWorx violated the FMLA or state disability discrimination law, and any state disability discrimination claim is prescribed as a matter of law.

## III.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

 "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[78]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[79]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's

---

[75] Rec. Doc. No. 32-3, Declaration of Fontenot at ¶¶ 4-5.    Plaintiff denies this, stating only the legal conclusion that "Mr. Collins was discriminated against."  *See* Rec. Doc. No. 36-1 at ¶ 29.
[76] Rec. Doc. No. 32-3, Declaration of Fontenot at ¶ 6.
[77] The court notes they are uncontested because Plaintiff primarily failed to offer any countervailing facts supported by admissible, record evidence.
[78] Fed. R. Civ. P. 56(a).
[79] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

case."[80]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[81]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[82]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[83]  All reasonable factual inferences are drawn in favor of the nonmoving party.[84]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[85]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[86]

## B. The FMLA, Generally

Congress enacted the FMLA to permit eligible employees "to take reasonable

---

[80] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).

[81] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[82] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[83] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[84] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[85] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[86] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious medical condition."[87] The statute guarantees eligible employees a total of twelve weeks of leave in a one-year period when the leave relates to the employee's serious medical condition.[88] Upon the employee's timely return, the employer must reinstate the employee "to the same position as previously held or a comparable position with equivalent pay, benefits, and working conditions."[89]

The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave.[90] It is also unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices.[91]

### C. FMLA Interference

To establish a *prima facie* FMLA interference case, a plaintiff must show that: (1) he was an eligible employee, (2) the defendant was an employer subject to the FMLA's requirements, (3) the plaintiff-employee was entitled to leave, (4) he gave proper notice of his intention to take FMLA leave, (5) and the defendant-employer denied him the benefits to which he was entitled under the FMLA.[92] The plaintiff-employee must also show that he was prejudiced by that denial.[93]

Defendant contends, assuming *arguendo* that Plaintiff satisfies the first four elements of his interference claim, he cannot demonstrate the fifth - that Defendant

---

[87] *Elsensohn v. St. Tammany Parish Sherriff's Office*, 530 F.3d 368, 378 (5th Cir. 2008).
[88] 29 U.S.C. § 2612(a)(1).
[89] *Smith v. E. Baton Rouge Parish Schl. Bd.*, 453 F.3d 650, 651 (5th Cir. 2006).
[90] 29 U.S.C. § 2615(a)(1).
[91] 29 U.S.C. § 2615(a)(2).
[92] *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012); *Anderson v. New Orleans Jazz & Heritage Festival & Found., Inc.*, 464 F.Supp.2d 562, 567 (E.D. La. 2006).
[93] *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021).

denied him any FMLA rights to which he was entitled.  Defendant relies on the following undisputed facts: both of Plaintiff's requests for FMLA relating to his 2017 injury were granted; Plaintiff was also given three extra weeks of leave by the Defendant even though he had used all available FMLA leave for the year; and Plaintiff's employment ended because he refused to work the shifts offered to him, which accommodated his physical therapy needs.

Defendant further contends the evidence submitted in this case establishes that Plaintiff was reinstated and given a raise following his first FMLA leave, he remained employed throughout his second FMLA leave, and he would have remained employed had he not refused to work the shifts offered to him.  Defendant maintains that "Collins was not entitled to flout legitimate workplace rules simply because he had taken FMLA leave."[94]

Plaintiff's response, although vague, appears to be that Defendant interfered with his right to FMLA leave because "ControlWorx uses a 12-month rolling FMLA period[,]" and "[u]nder the rolling method, the employer looks back over the 12-month period preceding the date leave is needed to determine how much of the 12-week yearly allotment of FMLA remains available …"[95]  Plaintiff argues that he "would have rolled over a new year for his leave, and thus, as of September 22, 2018, [he] was entitled to an additional 12 weeks of leave on a rolling FMLA basis."[96]  Plaintiff further contends that Fontenot "regularly " grants "extensions" of FMLA leave.[97]

---

[94] Rec. Doc. No. 32-2, p. 9.
[95] Rec. Doc. No. 36-1, ¶ 6.
[96] *Id.* at ¶ 9.
[97] *Id.* at ¶ 6.

In his *Opposition*, Plaintiff fails to discuss the *prima facie* elements for an interference claim.  He simply cuts and pastes several regulations regarding the FMLA from the Code of Federal Regulations.  There is no analysis discussing how these regulations have been violated by the Defendant.  Plaintiff offers no jurisprudence and little argument.  Plaintiff's entire opposition argument to Defendant's *Motion for Summary Judgment* on the FMLA interference/retaliation claims is:

> The employer could have required additional information and did not. See CFR §825.125(b), the employer has the duty to inform employee of leave. See CFR §825.202(a)(b). the Employer should have transferred Mr. Collins to alternative position. CFR §825.204 or an equivalent position CFR §825.215. Mr. Collins requested leave the employer should have granted leave. CFR §825.220. Mr. Collins was protected for opposing a change in his schedule. See CFR §825.220. The employer had the duty to give him FMLA leave protections. CFR §825.300.[98]

Defendant responds that Plaintiff has taken Fontenot's testimony out of context in arguing that she "regularly grants extensions" of FMLA leave.  Defendant is correct.  Plaintiff has not established that he was entitled under the FMLA to "extensions"; Plaintiff confuses the extra three weeks of leave given by Defendant as an extension of the FMLA leave he had exhausted.  Defendant was not required under the FMLA to give the three-week extension that it did.

Defendant also correctly notes that Plaintiff supplies no argument or evidence to demonstrate that he was entitled to a "new" 12 weeks of leave on September 22, 2018, under a "rolling FMLA basis."[99]  It is established that Plaintiff used all twelve weeks of FMLA leave available to him in calendar year, in addition to three weeks of extended

---

[98] Rec. Doc. No. 36, p. 11.
[99] *See* Rec. Doc. No. 36, p. 2.

leave, provided by the Defendant.  The extra three weeks was gratuitous; it was not required by the FMLA nor was it an extension of FMLA leave.

The Court finds that Plaintiff has failed to present a genuine, material fact issue to survive summary judgment.  The uncontroverted record evidence demonstrates that Plaintiff was not entitled to a "new" 12 weeks of FMLA on September 22, 2018, under the rolling method utilized by Defendant.  First, Plaintiff testified at his deposition that he had been given "roughly 15 or 16 weeks" of leave in the previous year and that Defendant had given him "a little extra after that."[100]  Asked specifically: "So you used all of the FMLA, and you got some additional leave?", Collins responded "Correct."[101]

Defendant submitted the testimony of Fontenot, who explained that the company "uses a rolling 12-month … leave period."  Fontenot explained this method:  "What happens is when an employee requests leave, I take the date that they need – they need the leave and look back 12 months.  Each time an employee requests leave, I start from the date they need that leave and look back 12 months."[102]  Fontenot went on to explain why Plaintiff was not entitled to a "new" 12 weeks on the one-year anniversary of the date of Plaintiff's first FMLA leave:

> BY MS. FONTENOT:
> A. So, he gets 12 weeks in 12 months. When the 12 months are up, he doesn't automatically get another 12 weeks.
> BY MS. McDANIEL:
> Q. Okay. What does he get?
> A. He gets whatever is outside of the prior 12 months.
> Q. Give me an example so that I understand. Let's use Ryan as an example, Ryan Collins. Give me an example of how that was calculated for him.
>                                       . . .

---

[100] Rec. Doc. No. 32-4, Depo of Collins at p. 96, ll. 1-5.
[101] *Id.* at ll. 6-8.
[102] Doc. No. 32-4, Depo of ControlWorx at p. 35, ll. 1-11.

BY MS. FONTENOT:
A. When he took the leave in 2017, the previous 12 months he had taken no leave, so he used 6.3 weeks. He had the entire 12 weeks to use, and in this absence, he used 6.3 weeks.
BY MS. McDANIEL:
Q. Okay.
A. When he took the second leave and needed the second leave in 2018, I would have taken that 6.3 weeks using the prior 12 months, leaving him what, 5.8, 5.7 weeks for the 2018 one that started.
Q. Okay. So, when he applied for the 2018 leave, he had 5.7 weeks of leave left?
A. Yes.
Q. Okay.
A. Which would have ended August the 28th --
Q. Okay.
A. -- of 2018.[103]

Further, the exhibits attached to Fontenot's Declaration demonstrate that this policy was posted to give notice to all employees.  This HR Policy posting reads:

> Under the Family and Medical Leave Act (FMLA), employees who have been employed for at least 12 months (continuous or noncontinuous, with the exception of certain breaks in service as defined under the FMLA), have worked 1,250 hours of service during the previous 12-month period preceding the start of the leave, and who work at a worksite where there are 50 or more employees within 75 miles of that worksite, are eligible for up to 12 weeks of unpaid leave of absence during each rolling 12-month period for one or more of the following reasons …"[104]

Plaintiff admitted that Defendant publishes to employees its policies regarding the FMLA and PTO.[105]

Despite the uncontroverted evidence set forth above, Plaintiff inexplicably maintains the argument that he was entitled to a "new" 12 weeks of FMLA leave on September 22, 2018.  Plaintiff cites no evidence or jurisprudence that supports this

---

[103] *Id.* at p. 43, l. 9 - p. 44, l. 9.
[104] Rec. Doc. No. 32-3, p. 11.
[105] Rec. Doc. No. 36-1, ¶ 30.

argument. Further, it is clear from the very regulations Plaintiff cites that this rolling method is allowed under the FMLA:

> (b) An employer is permitted to choose any one of the following methods for determining the 12–month period in which the 12 weeks of leave entitlement described in paragraph (a) of this section occurs:
>
> . . .
>
>> (4) A "rolling" 12–month period measured backward from the date an employee uses any FMLA leave as described in paragraph (a).[106]

Thus, while Defendant assumed for the sake of argument that Plaintiff could satisfy the first four prongs of his FMLA interference claim, the Court finds that he has failed to demonstrate a genuine fact issue as to his eligibility for leave. Based on the summary judgment evidence in this case, Plaintiff was not eligible for a "new" 12 weeks of FMLA in late September of 2018 as all FMLA leave had been exhausted in the previous 12-month period.

Interpreting all competent summary judgment evidence in the light most favorable to Plaintiff and, considering the facts that have been admitted and deemed admitted in this matter, Plaintiff has failed to demonstrate a genuine dispute of material fact as to his FMLA interference claim. Defendant is entitled to summary judgment on this claim.

**D.    FMLA Retaliation**

Plaintiff also claims that Defendant retaliated against him for taking FMLA leave by terminating him. An employer's prohibited discrimination or retaliation gives rise to a claim under 29 U.S.C. § 2615(a)(2). "To prove FMLA retaliation, the employee must demonstrate: '1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not

---

[106] 29 C.F.R. § 825.200 (2008).

requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA.'"[107]

An employee must "show 'there is a causal link' between FMLA-protected activity and the adverse action."[108] Neither the Fifth Circuit, nor the Supreme Court, has decided whether the heightened "but for" causation standard required for Title VII retaliation claims applies to FMLA retaliation claims.[109] However, "the Supreme Court has held that in order to establish the causal link, temporal proximity, if offered by itself, must be 'very close.'"[110]

Summary judgment for a retaliation claim under the FMLA is subject to the *McDonnell Douglas* burden-shifting analysis.[111] Once a *prima facie* case is made, the burden shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the employment decision.[112] If the employer meets this burden, under *McDonnell Douglas*, the burden shifts to the p0laintiff to demonstrate either: (1) that the employer's reason is a pretext for discrimination; or (2) that the employer has a discriminatory or retaliatory motive in addition to a legitimate reason, or mixed motives.[113]

Turning to the *prima facie* elements for a FMLA retaliation claim, the first element is undisputed:  Plaintiff was protected under the FMLA.  Whether Plaintiff suffered an adverse employment action is disputed.  Defendant argues that Plaintiff abandoned his

---

[107] *Acker v. GM, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017) (quoting *Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 674, 583 (5th Cir. 2006)).

[108] *Acker*, 853 F.3d at 790 (citing *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327 (5th Cir. 2005)).

[109] *Wheat v. Florida Parish Juvenile Justice Com'n*, 811 F.3d 702, 706 (5th Cir. 2016)(citations omitted).

[110] *Leal v. BFT, Ltd. P'ship*, 423 F. App'x 476, 479 (5th Cir. 2011) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam) (noting that the time periods of three and four months had been found by the appellate courts to be "very close" and holding that a period of twenty months was not "very close")).

[111] *Spears v. Louisiana Department of Public Safety and Corrections*, 2 F.Supp. 3d 873, 879-880 (M.D. La. 2014)(citing *Varise v. H & E Healthcare, LLC*, No. 10–666, 2012 WL 5997202 at *2 (M.D.La. Nov. 30, 2012)).

[112] *Id*. at 880.

[113] *Spears*, 2 F.Supp. 3d at 880 (citing *Richardson,* 434 F.3d at 333).

employment by refusing to work the shifts that were offered to him.  Collins admitted in his deposition that he told Green he was not going to work either the 8 am shift or the 11 am shift.[114]    However, Plaintiff disputes that he voluntarily quit his position with Defendant.[115]

Plaintiff's only apparent response as to the FMLA retaliation claim is to argue that he suffered a "tangible employment action."[116]  This standard is inapplicable to this case as this is not a Title VII harassment case, and the jurisprudence on which Plaintiff relies is from supervisor sexual harassment cases, also inapplicable.    Nevertheless, considering the evidence in the light most favorable to Plaintiff there is a genuine dispute of material fact as to whether Plaintiff was terminated or quit, thus the second element is satisfied.

As to the third element, Plaintiff has offered no comparator, so the Court will assume Plaintiff's argument is that he was retaliated for taking and/or requesting FMLA leave.    Considering the established facts in the record, the Court will  finds there is a question of fact as to the third element.

The burden shifts to the Defendant to present a legitimate, non-discriminatory reason for Plaintiff's termination.    Defendant has satisfied this burden by providing evidence that it offered Plaintiff accommodations in scheduling, but Plaintiff nevertheless continued to break company policy by coming in early, and he refused to work the shifts offered to him.

---

[114] Rec. Doc. No. 32-5, Depo of Collins at p. 110, ll. 15-20-25, p. 114, ll. 18-25, p. 115, ll. 1-25, p. 116, ll. 1-25, p. 117, ll. 1, and Exhibit 18 thereto.
[115] *Id.* at p. 135.
[116] Rec. Doc. No. 36.

Plaintiff's opposition is silent on pretext, neither argument nor evidence having been presented. The record too is silent on pretext it is undisputed that Plaintiff was given a raise after his first FMLA leave and that, had Plaintiff chosen one of the shifts offered to him, as accommodated, he would still be employed by Defendant, and his FMLA leave was gratuitously extended by his employer.

The Fifth Circuit has held that "[a]n employee who requests or takes protected leave under the FMLA is not entitled to any greater rights or benefits than he would be entitled to had he not requested or taken leave." [117] As this Court held in *Amedee v. Shell Chemical LP-Geismer Plant*:  "Approval of FMLA leave does not create the guarantee of employment. [The] FMLA was intended to guarantee the ability to take leave without risk of loss of employment. While the taking of FMLA leave should not expose an employee to job loss owing to the taking of leave, the leave itself does not create a job guarantee where factors unrelated to the leave affect continued employment."[118]  Plaintiff readily admitted that he continued to come in to work early although he had been told not to do this by management. The record also demonstrates that Plaintiff wanted to set his own working schedule, regardless of the company's needs and established shifts.

 Defendant has submitted a legitimate, nondiscriminatory reason for Plaintiff's purported termination. Plaintiff has failed to demonstrate a genuine issue of material fact as to pretext, and Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

---

[117] *Grubb v. Sw. Airlines*, 296 F. App'x 383, 391 (5th Cir. 2008) (emphasis added) ("this principle is not only reflected in FMLA regulations on reinstatement, see 29 C.F.R. § 825.216(a), but is also a matter of common sense.")(citation omitted).
[118] 384 F.Supp.3d 613, 633 (M.D. La. 2019), *aff'd sub nom. Amedee v. Shell Chem., L.P.*, 953 F.3d 831 (5th Cir. 2020).

### E.    LEDL Disability Discrimination

Modeled after the Americans with Disabilities Act ("ADA"), the LEDL prohibits disability discrimination.[119]  The LEDL contains a one-year prescriptive period but allows for tolling if a federal action is pending before the EEOC. It states:

> Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights.[120]

The Louisiana Supreme Court has held that this one-year prescriptive period begins to run from the date of notice of termination.[121] The U.S. Fifth Circuit Court of Appeals and district courts within Louisiana have repeatedly recognized that Section 23:303(D) provides for a maximum prescriptive period of eighteen months.[122]

Defendant argues as follows regarding prescription:

> Collins's separation from employment occurred on October 12, 2018, at which time the one-year prescriptive period began to run.[123] Collins signed his Charge of Discrimination on June 15, 2019, 246 days after his separation.[124] The EEOC mailed its Dismissal and Notice of Rights on October 17, 2019.[125] Collins filed his Complaint on April 2, 2020.[126]

---

[119] La. R.S. 23:323.
[120] La. R.S. 23:303(D).
[121] *Eastin v. Entergy Corp.*, 865 So.2d 49, 54 (La. 2004).
[122] *See, e.g., Williams v. Otis Elevator Co.*, 557 Fed.Appx. 299, 302 (5th Cir. 2014) ("The Louisiana anti-discrimination statute has a prescriptive period of one year, which can be suspended for a maximum of six months during the pendency of a state or federal administrative investigation."); *Lefort v. Lafourche Par. Fire Prot. Dist. No. 3*, 39 F. Supp. 3d 820, 825 (E.D. La. 2014) (Vance, J.) ("Consequently, the Louisiana disability discrimination statute requires a plaintiff to file suit on his discrimination claim no later than eighteen months after the occurrence forming the basis for the claim.") (internal quotations omitted); *Wilson v. Bd. of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll.*, 2014-0074, 2016 WL 1394237 (La. App. 1 Cir. 2016) ("[A complainant's employment discrimination claim] has a one-year prescriptive period, which may be extended up to a total of eighteen months, if the complainant has filed a complaint with the EEOC or the LCHR.").
[123] Rec. Doc. No. 32-2, p. 14 (citing Rec. Doc. 1 at ¶ 5).
[124] Rec. Doc. No. 32-5, p. 71.
[125] *Id.* at p. 74.
[126] Rec. Doc. No. 1.

The prescriptive period was suspended during the pendency of Collins's charge from June 15 to October 17, 2019, at which time the prescriptive period began to run again. Having already exhausted 246 days of the one-year prescriptive period, Collins had only 119 days from October 17, 2019, or until February 13, 2020, to file his Complaint. He did not timely file.

Put another way, there are 533 days (1 year, 5 months, 16 days) between the date of Collins's separation from employment and the filing of the Complaint. Collins's EEOC Charge was pending for 125 days (4 months, 3 days). Thus, the longest prescriptive period he had to file his state law discrimination claim was 1 year, 4 months, and 3 days. However, he did not file the lawsuit until 1 year, 5 months, and 16 days after the last alleged discriminatory act. Collins's state law claims are untimely and must be dismissed.[127]

Plaintiff failed to provide any response whatsoever to this argument; thus, under Local Rule 7(f), this claim is unopposed. Further, the Court has considered the summary judgment evidence submitted on this issue and finds that this claim is, indeed, prescribed. Accordingly, there being no genuine dispute of material fact on this issue, Defendant is entitled to summary judgment on Plaintiff's LEDL claim.

The Court notes, in the alternative, that Plaintiff' LEDL claim would be dismissed on the merits, if not prescribed. It is clear from Plaintiff's *Opposition* that Plaintiff believes the law required Defendant to allow him to set his own shift schedule and to burden other employees with covering Plaintiff's missed work. However, the law is well-established that neither is considered a reasonable accommodation under federal and state disability discrimination law.

The Fifth Circuit has held, on several occasions, that "an accommodation that would result in other employees having to work harder or longer is not required under the

---

[127] Rec. Doc. No. 32-2, p.14.

ADA."[128]  "[T]he ADA does not require an employer to create a new job category for the disabled worker or to adjust coworkers' duties to make them work longer or harder."[129]  In *E.E.O.C. v. LHC Group, Inc.*, the Fifth Circuit held:  "[t]he ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so."[130]

Thus, although Plaintiff's LEDL claim is prescribed, the Court notes in the alternative that Plaintiff failed to carry his burden on his state disability discrimination claim because Plaintiff would only agree to an accommodation that was not reasonable as a matter of law.

## IV.    CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[131] by Defendant, ControlWorx, LLC is GRANTED.  Plaintiff, Ryan Collins' claims are dismissed with prejudice.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 2nd day of February, 2022.

_____
**SHELLY D. DICK**
**DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[128] *Turco v. Hoechst Celanese Corp.*, 101 F .3d 1090, 1094 (5th Cir.1996).

[129] *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir.1999)

[130] 773 F.3d 688, 698 (5th Cir. 2014)(citing *Burch*, 174 F.3d at 621 (5th Cir.1999) (holding employer was not required to accommodate firefighter who could not fight fires); *see also Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir.1997) ("We cannot say that [an employee] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions."); *Hammond v. Jacobs Field Servs.*, 499 Fed.Appx. 377, 382–83 (5th Cir.2012) (per curiam) (affirming summary judgment when the only available accommodation was to reassign employee tasks all typically distributed among line operators.)).

[131] Rec. Doc. No. 32.